# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**BENJAMIN VERSELL**                                                   **PLAINTIFF**

**v.**                                                                 **No. 1:13CV155-MPM-JMV**

**MISS. DEPT. OF CORRECTIONS, ET AL.**                          **DEFENDANTS**

## REPORT AND RECOMMENDATION

The plaintiff, an state inmate in the custody of the Marshall County Correctional Facility, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

The plaintiff's problems began at the Alcorn County Regional Correctional Facility, then continued through his transfer to the Mississippi State Penitentiary. He is currently housed at the Marshall County Correctional Facility. Versell's claims fall into several categories, which the court has set forth separately below.

### Due Process

On July 23, 2012, while housed at the Alcorn County Regional Correctional Facility, Versell received a Rule Violation Report for possession of major contraband (a cell phone). Versell requested an investigation and a hearing on the charge. He attended a disciplinary hearing on the matter on July 25, 2012, after which he was found guilty of the infraction based upon the officer's statement in the

---

[1] 28 U.S.C. § 1915(g).

report. As punishment he received a review which led to a downgrade in his custody level. Though the hearing occurred on *July* 25, the hearing officer inadvertently listed the date as *June* 25, the date of a previous Rule Violation Report for failure to submit to urinalysis. When Versell first appealed the guilty finding, his appeal was rejected on August 10, 2012, as untimely because of the erroneous date on the hearing form. The denial of Versell's first appeal had two problems: (1) the respondent was not listed, and (2) the respondent's signature was illegible. Versell then discovered that Warden Mullins had handled the appeal.

Case Manager Blackwell agreed with Versell's assessment of the problems and helped him file a second appeal, noting the incorrect date. That appeal was rejected by Warden Mullins without a stated reason or any accompanying documents. At Blackwell's urging, Versell filed a third appeal, but Warden Mullins did not even acknowledge the third attempt.

As a result of the guilty finding, Versell was transferred on March 22, 2013, to the Mississippi State Penitentiary and placed in punitive segregation. A case manager told Versell that the goal of his punitive segregation was to be placed in the "Cell Phone Management Unit" in Unit 29-K. Though the program can last as long as 6 months, Versell stayed in the program only 90 days (from April 11, 2013, until July 11, 2013) because of good behavior. While he moved through the program, he filed a grievance challenging the denial of his appeal for the infraction that had led directly to the reduction in his custody level. He won the appeal on July 23, 2013, but he had already completed his course of punishment for the infraction. In addition, he was not released from Unit 29-L, though the RVR that put him there had been dismissed.

### *Sandin*

Versell's claim regarding denial of due process fails in light of *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Versell has not set forth a claim which implicates the Due Process Clause or any other constitutional protection. *Sandin* holds, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause [, but] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 115 S. Ct. at 2300 (citations omitted). In the *Sandin* case, the discipline administered the prisoner was confinement in isolation. Because this discipline fell "within the expected parameters of the sentence imposed by a court of law," *id.* at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," *id.*, the Court held that neither the Due Process Clause itself nor State law or regulations afforded a protected liberty interest that would entitle the prisoner to the procedural protections set forth by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935 (1974). *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

In this case, Versell's punishment, placement in a 6-month program (reduced to 90 days) to prevent future use of a cellular phone, falls well within the type of punishment one could expect during incarceration – and does not constitute an unusual, significant deprivation giving rise to a liberty interest. As such, Versell's due process allegations should be dismissed for failure to state a claim upon which relief could be granted.

## General Conditions

After completing his stay in the Cell Phone Management Unit, Versell returned to 29-L building, which, though not characterized as punitive segregation, is nearly as restrictive. Unit 29-L is a temporary detention area for holding inmates who are being moved from one unit to another. During his stay in Unit 29, he was housed near mentally ill prisoners who were violent, noisy, and sexually aggressive towards the female staff. Unit 29 – as a whole – was locked down from June 11, 2013, until July 15, 2013, then from July 26, 2013, until August 5, 2013, in order to quell an outbreak of gang violence there. During that time, inmates could not have any recreation time; laundry cleaning was sharply curtailed, as was cleaning of the cells and passageways, generally.

Versell's claim of unconstitutionally harsh general conditions of confinement should also be dismissed. "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Versell complains of temporary placement near mentally ill inmates who were loud and boisterous. He also complains that recreation, laundry, and the cleaning of cells and passageways were severely limited during a 44-day period of lockdown to quell extreme gang violence. He has not alleged that he suffered any harm from these conditions. Based upon a review of the "totality of the

circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the undersigned concludes that the instant claims do not rise to the level of a constitutional violation, as Versell has described conditions of discomfort and inconvenience, rather than those which affect his health or safety. Versell has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581. As such, his claims regarding general conditions of confinement should be dismissed for failure to state a claim upon which relief could be granted.

### Denial of Access to the Courts

In addition, inmates in Unit 29 did not have access to legal materials or legal mail during the unit lockdown, though Versell did not miss any legal deadlines due to the deviation from normal procedure. Inmates simply gave their mail, legal or otherwise, to a guard, who then passed it to the mail room. The right of access to the courts is limited to allow prisoners opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted).

However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992), citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). It is only when a prisoner suffers some sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real

detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970).

An inmate's right of access to the courts may be fulfilled in ways other than access to a law library. *Lewis v. Casey*, 518 U.S. 343, 351,116 S.Ct. 2174, 2180 (1996). The right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance[;] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. In the present case, Versell concedes that he neither missed a legal deadline nor suffered prejudice to any of his legal claims. For these reasons, the plaintiff's claim of denial of access to the courts should be dismissed for failure to state a constitutional claim.

**Free Exercise of Religion**

About once per month, officials in Unit 29-K and Unit 29-L served pork products to Muslim inmates who have requested diet trays without it – and did not give the inmates the choice of a substitute meat. In addition, there was no way for inmates in Unit 29 segregation to attend Muslim Friday worship services. Indeed, due to the temporary nature of custody in Unit 29, prison officials do not permit any type of religious service. He is now housed at the Marshall County Correctional Facility, where he no longer attends Friday Muslim worship services, though they are available. In addition, though prison officials served Versell pork meat about once per month while he was housed in Unit 29, that is not the case at the Marshall County Correctional Facility. He does, however, receive Jell-o and pudding, both of which he believes to be a pork product. He has not been allowed to receive a substitute for these foods when they have been served as part of the normal prison diet.

**Exhaustion of Administrative Remedies**

Although exhaustion of administrative remedies is an affirmative defense, normally to be pled by a defendant, the court may dismiss a *pro se* prisoner case if failure to exhaust is apparent on the face of the complaint – or is admitted during testimony at the *Spears* hearing. *Carbe v. Lappin*, 492 F.3d 325 (5th Cir. 2007). The Prison Litigation Reform Act states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The administrative remedy program ("ARP") in place at the Mississippi Department of Corrections ("MDOC") facilities, including the facilities at the Marshall County Correctional Facility, has been approved by this court in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. 1971) (order dated February 15, 1994). A district court may dismiss a lawsuit if the plaintiff fails to complete the ARP. *Underwood v. Wilson*, 151 F.3d 292, 293 (5th Cir. 1998), *cert. denied,* 119 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999) (quoting *Rocky v. Vittorie,* 813 F.2d 734, 736 (5th Cir. 1987)). While the exhaustion requirement is not jurisdictional, *id.* at 293-95, "[a]bsent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies must be exhausted before the filing of suit should be imposed." *Wendell v. Asher,* 162 F.3d 877, 890-91 (5th Cir. 1998); *Smith v. Stubble field*, 30 F.Supp. 2d 1168, 1170 (E.D. Mo. 1998). "To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation." *Wendell,* 162 F.3d at 981 (citations omitted). In this case, Versell concedes that he has not exhausted his claims regarding free exercise of religion during his stay at Unit 29 of the Mississippi State Penitentiary. As such, this claim must be dismissed for that reason.

## Conclusion

In sum, each of the plaintiff's claims must be dismissed for want of substantive merit – or for failure to exhaust administrative remedies, and the instant case should be dismissed.

## Handling of Objections, Acknowledgment of Receipt

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted, this, the 2nd day of April, 2014.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE